***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. All parties have been correctly designated, and there is no question as to misjoinder or nonjoinder of parties.
3. An employment relationship existed between plaintiff-employee and defendant-employer Wal-Mart. American Home Assurance was the insurer on the risk on the date of the injury, May 27, 2005.
4. On May 27, 2005, plaintiff sustained a compensable injury by accident to her knees arising out of and in the course and scope of her employment with defendant-employer.
5. Defendants accepted plaintiff's claim for a workers' compensation injury to her knees on May 27, 2005, but denied plaintiff's later claim that said incident also resulted in injury to her back.
6. At the hearing before the Deputy Commissioner, a Pre-Trial Agreement was submitted as Stipulated Exhibit #1, Industrial Commission forms were submitted as Stipulated Exhibit # 2; plaintiff's medical records were submitted as Stipulated Exhibit #3; plaintiff's personnel file was submitted as Stipulated Exhibit # 4; workers' compensation record from defendant-employer was submitted as Stipulated Exhibit #5.
7. The parties agreed that plaintiff's average weekly wage could be determined from a Form 22, which was subsequently submitted by the defendants. Plaintiff's average weekly wage is $424.92, which yields a weekly compensation rate of $283.29.
8. The issues before the Commission are whether plaintiff sustained a compensable injury by accident to her back on May 27, 2005 as a result of her employment with defendant-employer, *Page 3 
where defendants have accepted the case as an injury by accident to her knees occurring on that date; and, if so, what are the compensable consequences.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 50 years of age, with a date of birth of February 12, 1958. She completed high school. As of the hearing date, she had been working as a stocker for Wal-Mart for about seven years. Plaintiff's job duties required her to assist in unloading freight from trucks and stack boxes onto pallets, which were then manually transported throughout the store. Plaintiff's primary duties consisted of stocking shelves, which required climbing up and down ladders, constant standing on floors, frequent bending and stooping, and heavy lifting.
2. On May 27, 2005, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of her employment with defendant-employer while on her way in to work when she fell onto her knees in the parking lot of defendant-employer's store, which was owned, controlled and maintained by defendant-employer. This accident was accepted as a compensable injury to her knees.
3. On May 29, 2005, plaintiff was examined by Dr. David Ward of ProMed Asheville and reported pain in her knees, primarily her right knee. Plaintiff reported the pain began after she fell while walking on the sidewalk to work, striking her knees. Her pain and swelling became progressively worse while getting up and down and using a ladder at work. Dr. Ward assessed knee contusion and sprain. He took her out of work until June 3, 2005, with a follow-up visit planned for June 5, 2005. *Page 4 
4. Plaintiff was out of work approximately a week and then returned to work in her regular duties as a stocker, which required bending, stooping, squatting and climbing. Due to continuing pain and symptoms in her knees, as well as the development of low back symptoms, plaintiff had difficulty performing her regular job duties. She talked with her co-workers and solicited their assistance at times. Both Sheila Hoyt and Naomi Clubb, who worked with plaintiff, heard her complain of both knee pain and back pain shortly after her fall. Plaintiff limped at times and could not climb ladders to stock items.
5. Prior to May 27, 2005, plaintiff's co-workers testified that plaintiff was energetic and fully able to perform all of her regular job duties without any difficulty. Plaintiff's family physician, Dr. Michael Weizman of Ravenscroft Family Health Center, confirmed that he had never treated plaintiff for any back complaints prior to May 27, 2005.
6. On June 12, 2005, plaintiff returned to ProMed Asheville. At this visit, Dr. H. L. Clinton examined her, and she reported continued pain in her right knee. Dr. Clinton recommended that she avoid squatting on the job, if at all possible.
7. Despite her back and knee pain, plaintiff continued working. She solicited assistance as needed and treated with over-the-counter pain medications such as aspirin and Tylenol for her pain complaints. Plaintiff did not file a claim for her back, as she needed to work and she thought the back pain would get better.
8. Defendant-employer's human resources manager, Louise Cordell, sought out plaintiff to complete an incident report. Initially, Ms. Cordell did not report plaintiff's injury as a workers' compensation claim. Ms. Cordell admitted this was her error and the claim was later properly filed as a workers' compensation claim. On or about July 9, 2005, the appropriate associate's statement was completed. *Page 5 
9. Plaintiff continued working in pain and did not seek medical treatment for her back for almost a year. On May 17, 2006, she saw her family physician, Dr. Weizman, reporting low back pain, which she had been experiencing for several months, which began after a fall at work. Plaintiff also complained of pain and numbness in her legs, difficulty walking and trouble bending. Dr. Weizman recorded in his notes that after 15 minutes of standing, plaintiff's back hurt so severely that she had to sit down.
10. Dr. Weizman requested an MRI scan of the lumbar spine and indicated plaintiff was unable to work during the period of May 17, 2006 through May 27, 2006 due to ongoing back and leg pain. The lumbar MRI was done on May 18, 2006. The report from Asheville Radiology indicated mild degenerative discogenic changes throughout the lumbar spine with mild disc bulging at L2-3 and at L4-5.
11. Dr. Weizman saw plaintiff on May 23, 2006, and renewed her out-of-work status an additional two weeks. At the June 13, 2006 visit, Dr. Weizman reviewed the results of plaintiff's MRI scan, which showed disc bulging at L2-3 and at L4-5.
12. As part of the June 13, 2006, visit, Dr. Weizman completed plaintiff's request for medical leave. He indicated the medical leave was a workers' compensation claim, reporting the onset of problems as back pain/recent fall on job. Dr. Weizman noted that plaintiff would be on medical leave from May 17, 2006 through June 27, 2006. Based on her symptoms, Dr. Weizman determined that an orthopaedic referral might be appropriate and further noted that job retraining might be needed, as plaintiff's job required a great deal of lifting.
13. Plaintiff presented the medical leave of absence request to her employer. On June 13, 2006, defendant-employer's store manager approved the request, which was based upon back pain from a recent fall on the job. By that time, defendants were aware that plaintiff claimed her *Page 6 
back injury was due to a fall at work. However, despite such knowledge, defendants undertook no action to provide alternative suitable work to plaintiff to accommodate her condition.
14. Plaintiff continued under Dr. Weizman's care without significant improvement. He ultimately referred her for a neurosurgical evaluation with Dr. Ralph Loomis on August 11, 2006. Through this time, Dr. Weizman continued to complete leave of absence reports indicating plaintiff continued to suffer from back pain as a result of an on the job injury. Such leave of absence reports were presented to defendant-employer and continuously approved by the store manager up through July 16, 2006, at which time Dr. Weizman indicated the leave of absence was indefinite.
15. Plaintiff was seen by Dr. Ralph Loomis and reported her low back pain began after her fall and radiated down her side. Upon examination, Dr. Loomis noted findings of decreased pinprick of the distribution of her left lateral femoral nerve, which he testified was consistent with plaintiff's complaints. Dr. Loomis determined that plaintiff was not a surgical candidate and recommended conservative care including physical therapy.
16. Dr. Loomis testified to a reasonable degree of medical certainty and the Full Commission finds that, given her history of falling, her co-workers' confirmation of development of back pain within a few weeks after the fall, and Dr. Loomis' examination findings, plaintiff's low back condition was caused by her fall in May of 2005. Dr. Loomis further explained that in his experience, after a fall, patients might present initially with complaints of knee or ankle pain and then six months or so later, mention other injuries not previously reported, because the patient was so focused on the initial injury to the knee or ankle.
17. Both Dr. Loomis and plaintiff's personal physician, Dr. Weizman, are of the opinion, and the Full Commission finds, that plaintiff's fall of May 27, 2005 was the *Page 7 
precipitating factor in the development of her lower back pain. The Full Commission finds the testimony of plaintiff and her co-workers regarding plaintiff's complaints of back pain shortly after her fall to be credible. Therefore, plaintiff's back condition is causally related to her admittedly compensable fall at work.
18. Dr. Loomis is of the opinion that plaintiff would be capable of working at a sedentary type position where she would be able to get up and walk around every hour and lift no more than five pounds. Dr. Loomis recommended plaintiff receive conservative treatment, including physical therapy.
19. As a consequence of her fall of May 27, 2005, plaintiff developed back pain as well as knee pain. Since April 23, 2006, when her physician took her out of work, due to her knee and back pain, plaintiff has been unable to return to work performing her regular duties as a stocker for defendant-employer.
20. Defendant-employer has not offered plaintiff suitable employment within her restrictions. Plaintiff is still considered an employee of defendant-employer. In light of Dr. Weizman's medical statements that plaintiff was incapable of working and should be on a leave of absence beginning on May 17, 2006 and continuing, plaintiff's failure to search for alternative and suitable employment is found to be reasonable and in compliance with her own treating physician's recommendations.
21. Defendants submitted an NCIC Form 22 that reveals that during the fifty-two weeks prior to her workers' compensation injury, plaintiff worked a total of 319 days and earned a total of $19,364.32, yielding an average weekly wage of $424.92.
22. This matter was appealed by defendants to the Full Commission from an Opinion and Award awarding benefits and results in the affirmation of that award. *Page 8 
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. As a consequence of her admittedly compensable injury by accident on May 27, 2005, in addition to the injuries to her knees, plaintiff sustained injury to her lower back. N.C. Gen. Stat. § 97-2(6); Click v.Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389 (1980).
2. In order to meet the burden of proving disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993) (citations omitted). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms., Inc.,supra. *Page 9 
3. In the instant case, plaintiff has met her initial burden to show that due to her knee and lower back conditions, she is disabled from any employment. Plaintiff has been unable to return to work performing her duties as a stocker for defendant-employer since April 23, 2006. Defendant-employer has not offered plaintiff suitable work within her restrictions and plaintiff continues to be employed by defendant-employer. Based upon Dr. Weizman's recommendations that plaintiff be put on a medical leave of absence due to her back pain, her failure to attempt to locate work suitable to restrictions imposed by Dr. Weizman or Dr. Loomis is reasonable. N.C. Gen. Stat. § 97-29.
4. Defendants have not shown that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account plaintiff's physical limitations. Demery v. PerdueFarms, Inc., supra.
5. Plaintiff is entitled to payment by defendants of all medical bills for reasonably necessary medical treatment for plaintiff's bilateral knee and lower back injuries of May 27, 2005. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Based upon her average weekly wage of $424.92, plaintiff has a compensation rate of $283.29.
7. Pursuant to N.C. Gen. Stat. § 97-88, the Full Commission has discretion to award reasonable attorney's fees for appeals brought by insurers when the Full Commission orders the insurer to make or continue payments of compensation to the injured employer. Id.
 ***********
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following: *Page 10 
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $283.29 per week beginning April 23, 2006 and continuing until further Order of the Commission, subject to attorney's fees approved below. The amount accrued shall be paid in a lump sum.
2. Defendants shall pay all medical expenses incurred to date by plaintiff, including the cost of the evaluations and treatment recommended by Dr. Weizman and Dr. Loomis as a result of her compensable injury by accident of May 27, 2005, and continuing so long as such evaluations, examinations and treatments may be reasonably required to effect a cure, give relief or lessen plaintiff's period of disability.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff is approved for plaintiff's counsel. Twenty-five percent of the accrued lump sum benefits due plaintiff shall be deducted from that sum and paid directly to her counsel. Thereafter, plaintiff's counsel shall receive twenty-five percent of future ongoing compensation until further order of the Commission, which may be paid by every fourth check due plaintiff.
4. Defendants shall pay a 10% late payment penalty on any past due compensation pursuant to N.C. Gen. Stat. § 97-18(g).
5. Defendants shall pay interest on the final award or unpaid portion thereof from the date of the initial hearing on the claim until paid, at the legal rate of interest under N.C. Gen. Stat. § 24-1. N.C. Gen. Stat. § 97-86.2.
6. Plaintiff's counsel shall submit an affidavit to Commissioner Mavretic showing the hours spent on the appeal to the Full Commission. Plaintiff is entitled to a reasonable attorney's fee assessed against defendants pursuant to N.C. Gen. Stat. § 97-88.
 7. Defendants shall pay the costs. *Page 11 
This 24th day of November, 2008.
 S/_______________________
 LAURA KRANFELD MAVRETIC
 COMMISSIONER
CONCURRING:
S/_______________________ DANNY LEE McDONALD COMMISSIONER
S/_______________________ CHRISTOPHER SCOTT COMMISSIONER *Page 1